# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT L. STEPHENS,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **PHILADELPHIA PARKING** | : | |
| **AUTHORITY, et al.,** | : | **No. 10-2994** |
| Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                                                                                                                                                                              October 15, 2010

      Robert Stephens filed an Amended Complaint against the following Defendants: the Philadelphia Parking Authority; the Commonwealth of Pennsylvania; the Bureau of Administrative Adjudication; the Philadelphia Traffic Court; the City of Philadelphia; and the City of Philadelphia Department of Finance. According to Stephens, a "Live Stop" of his vehicle set in motion of chain of events that led to numerous civil rights violations. The Amended Complaint terms Stephens's treatment "Class Warfare" in violation of the United States Constitution. Presently before the Court are four motions to dismiss: one filed by the Commonwealth of Pennsylvania; one filed by the Philadelphia Traffic Court; one filed by the Bureau of Administrative Adjudication; and one filed by the Philadelphia Parking Authority. For the reasons provided below, the Court grants all four motions and dismisses the claims against those Defendants.

## I.    BACKGROUND

      On August 8, 2009, Stephens's vehicle, which was being driven by his son at the time, was pulled over at 52nd Street and Larchwood Avenue in Philadelphia, Pennsylvania. Because the car lacked valid registration, the officers performed a "Live Stop" impoundment of the car. (Compl. at

5.) In violation of proper procedure, the officers restrained his son for "well over an hour" and eventually left him in a "hostile area" over thirty-five miles from home and without access to public transportation. (*Id*.) Because his son was held for over an hour and the officer "took a $22,000.00 vehicle for a $150.00 fine," the officers purportedly violated Stephens's right to be free from cruel and unusual punishment. (*Id*. at 5-6.)

The stop occurred on a Saturday, and Stephens was forced to wait until Monday, August 10, 2009 to retrieve his vehicle from Traffic Court. He proceeded to the Philadelphia Traffic Court, where he "was sent to several windows and eventually went before a judge." (*Id*. at 6.) Thereafter, he submitted his registration to the court and "was required to post bail on the tickets . . . [and] then went to another window and paid the bail. At this time [his] car was cleared of having any other violation." (*Id*.) Stephens claims that also on August 10, 2009, he was sent to another window to pay for the tow so he could retrieve his car; he was also required to pay a storage tax in addition to the towing cost. (*Id*. at 8.) Stephens contends that this storage tax exceeded the maximum amount that the Commonwealth established may be charged to tow a vehicle. He further claims the storage tax is illegal because it places a greater burden on individuals who lack the financial means to pay it – "[u]nfortuantely, the victims are mainly young Black and Hispanic males." (*Id*.) He next complains that he was given a list of tickets, some as old as twenty-one years, totaling over $700. (*Id*.) A number of the citations did not belong to Stephens and none of them "were connected to the vehicle or license plate." (*Id*. at 9.) Plaintiff alleges that the statute of limitations has expired on the tickets and that "the car had to be involved in an illegal act to be held." (*Id*.) He believes that once he produced his registration and paid the bail, his car should have been released. (*Id*.) He claims that retaining his vehicle was an "illegal means to raise revenue" and "an act of extortion." (*Id*. at

2

10.)

Next, Stephens was forced to go to the Bureau of Administrative Adjudication ("the BAA") to get his car returned. (*Id*.) He was told that if he spoke or tried to escape responsibility for the tickets, he would not receive his car because it would be sold. (*Id*. at 11.) The BAA forced Stephens to sign an agreement to pay for the tickets by threatening him that if he did not sign the agreement, his car would not be returned to him. (*Id*.) According to Stephens, the BAA's actions constituted fraud and violated his due process rights and his right to be free from cruel and unusual punishment. (*Id*. at 11-12.) Stephens asserts that the BAA commonly employs these tactics of "blackmail, extortion, fraud and . . . kidnapping of . . . vehicle[s] . . . against the less fortunate . . . and less educated in Pennsylvania." (*Id*. at 12.) He tried to appeal the decision against him but was repeatedly told that the tickets were too old to contest. (*Id*. at 13.) He then went to the Court of Common Pleas but was told that he needed paperwork from the BAA that confirmed that the case was heard and that the verdict was against him. (*Id*.) The BAA refused to provide the paperwork and the Court of Common Pleas then advised him that he would need to get a lawyer and sue the BAA and that this was the BAA's common practice. (*Id*.)

Stephens complains that the process is "degrading and dehumanizing." (*Id*. at 15.) Specifically, people are told to show up early for Traffic Court but there is a long line to enter the building and that upon entering the building, "you must go through a search as if you were a criminal." (*Id*.) One must then go "from window to window" to learn the proper procedure. (*Id*.) He also complains that there are no public restrooms at the BAA and that individuals are directed to the Greyhound Bus Terminal. (*Id*. at 16.) Stephens also notes that the staff at the BAA are extremely rude "unless you are fortunate to have a lawyer." (*Id*.) Plaintiff asserts that this degrading

behavior is aimed at the less fortunate and denies them their constitutional right of equal treatment under the law. (*Id*. at 15.)

Stephens seeks compensatory damages for humiliation, pain and suffering, emotional distress and mental anguish, and lost wages. He also seeks punitive damages, requests that all of his tickets be expunged or that he be permitted to appeal to the Court of Common Pleas, and asks this Court to direct that the Philadelphia Parking Authority ("the PPA"), Philadelphia Traffic Court and the Commonwealth of Pennsylvania follow their laws and guidelines and cease to have different laws based on economic status. Finally, he wants the City of Philadelphia to end the storage tax and he wants the BAA to install public restrooms.

On June 27, 2010, Stephens amended his Complaint to add the City of Philadelphia and the City of Philadelphia Department of Finance as parties. His Amended Complaint seeks damages for "the deprivation of his constitutional rights caused by Class Warfare profiling and treatment" by the following parties: (1) the Philadelphia Traffic Court; (2) the Philadelphia Parking Authority; (3) the Commonwealth of Pennsylvania; (4) the Bureau of Administrative Adjudication; (5) the City of Philadelphia; and (6) the City of Philadelphia Department of Finance. (*Id*. at 2.) A number of Defendants have filed motions to dismiss raising jurisdictional arguments and claiming that Plaintiff failed to state a claim.

## II. STANDARD OF REVIEW

### A. Subject Matter Jurisdiction

A claim that a lawsuit is barred by the Eleventh Amendment is properly addressed in a Rule 12(b)(1) motion. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996)

("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction" (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984))). The Third Circuit has "cautioned against treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and reaching the merits of the claims" because "the standard for surviving a Rule 12(b)(1) motion is lower than that for a 12(b)(6) motion." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (citing *Kehr Packages, Inc. v. Fidelcor*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

There are two types of Rule 12(b)(1) motions. With regard to the first type, a facial attack on the court's subject matter jurisdiction, the court is required to assume that the plaintiff's allegations are true. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When confronted with the second type, a factual attack, the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" because there is "no presumptive truthfulness attache[d] to plaintiff's allegations." *Id.*

The assertion of Eleventh Amendment immunity as a defense is properly treated as a facial challenge. *M & M Stone Co. v. Pa., Dep't of Envtl. Protection*, Civ. A. No. 07-4784, 2008 WL 4467176, at *13 (E.D. Pa. Sept. 29, 2008) (citing *Urella v. Pa. State Troopers Ass'n*, Civ. A. No. 07-3089, 2008 WL 1944069, at *3 (E.D. Pa. May 2, 2008)). Therefore, for the purpose of resolving Defendants' motion to dismiss, the allegations of Plaintiff's complaint are accepted as true. *See Gould Elecs.*, 220 F.3d at 176. The party asserting immunity bears the burden of production and persuasion. *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006).

**B.     Failure to State a Claim**

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party.

*See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001). A court should read the allegations in the light most favorable to the plaintiff and determine whether a reasonable reading indicates that relief may be warranted. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Because Stephens is acting pro se, this Court must construe his Amended Complaint liberally and apply the applicable law, even if he failed to mention it by name. *See Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Simply reciting the elements will not suffice. *Id*. (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim

6

should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id*. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged – but has failed to show – that the pleader is entitled to relief. *Id*.

**III. DISCUSSION**

    **A.    Claims Against the Commonwealth**

The Commonwealth argues that the Eleventh Amendment bars all § 1983 claims against it. Stephens counters that Plaintiff is not seeking money from the Commonwealth but merely redress for Pennsylvania's failure to follow the law and enforce it consistently in both richer and poorer counties. He also claims that *Ex parte Young* applies because he is only seeking to "end a continuing violation of federal law through class warfare and a violation of the 14th Amendment." (Pl.'s Mot. Not to Dismiss Am. Compl. [Pl.'s Resp. to Commonwealth's Mot. to Dismiss] at 7.)

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." A federal court may not adjudicate a lawsuit brought by a citizen against his own state. *Hans v. Louisiana*, 134 U.S. 1, 13-14 (1890); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) ("[T]his Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). But the Eleventh Amendment does not expel from federal

courts all lawsuits involving a state. A state may consent to be sued in federal court if that consent is unequivocally expressed. *See Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). Similarly, Congress may abrogate Eleventh Amendment immunity if it expresses its intent unequivocally. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55-56 (1996) (citations omitted); *see also Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). Furthermore, the Supreme Court has held that a lawsuit challenging the constitutionality of a state official's action is not one against the state and is therefore not barred by the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123 (1908). Because state enactments in violation of the Constitution are void and thus cannot be authorized by the state, the official is stripped of immunity as a representative of the state. *Halderman*, 465 U.S. at 102 (citing *Ex parte Young*, 209 U.S. at 160)). Accordingly, immunity to lawsuits in federal courts does not extend to litigation brought against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).

None of the exceptions noted above are applicable here. Pennsylvania has expressly refused to consent to lawsuit in federal courts. 42 PA. CONS. STAT. § 8521(b). Nor did Congress abrogate Eleventh Amendment immunity when it passed § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Additionally, the *Ex parte Young* exception does not apply here because Stephens sued the Commonwealth of Pennsylvania. The Eleventh Amendment bars lawsuits against states in federal court, regardless of the relief sought. *See Seminole Tribe*, 517 U.S. at 58. Finally, Stephens's claims against the Commonwealth must be dismissed because states are not "persons" pursuant to § 1983 and thus are not subject to lawsuits under that law. *Will v. Mich. Dept. of State Police*, 491 U.S. 58,

71 (1989).

With respect to any state law claims filed against the Commonwealth, those must also be dismissed based on sovereign immunity. *See Urella v. Pa. State Troopers Ass'n*, 628 F. Supp. 2d 600, 605-06 (E.D. Pa. 2008); 1 PA. CONS. STAT. § 2310.

### B. Claims Against the Philadelphia Traffic Court

The Philadelphia Traffic Court moves to dismiss the claims against it based on Eleventh Amendment immunity. Stephens again cites to *Ex parte Young* by arguing that he is seeking to end a continuing violation of federal law. (Pl.'s Mot. Not to Dismiss Am. Compl. [Pl.'s Resp. to Traffic Court's Mot. to Dismiss] at 4.)

The Philadelphia Traffic Court is part of Pennsylvania's unified judicial system and is subject to control by the Pennsylvania Supreme Court. 42 PA. CONS. STAT. § 301(8) ("The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the . . . Traffic Court of Philadelphia."). As an entity of the Commonwealth, it is entitled to immunity under the Eleventh Amendment. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005); *see also Lynch v. City of Phila.*, Civ. A. No. 08-4780, 2009 WL 1424489, at *2 (E.D. Pa. May 20, 2009). Furthermore, the Philadelphia Traffic Court is not a "person" for purposes of § 1983. *See Lynch*, 2009 WL 1424489, at *2 (quoting *Callahan v. City of Phila.,* 207 F.3d 668, 673 (3d Cir.2000)).

### C. Claims Against the Philadelphia Parking Authority

Plaintiff alleges that the PPA "tried to steal [his] car" when it demanded that he pay $700 worth of tickets, some of which dated back twenty-one years, before it released his vehicle. (Am. Compl. at 8.) He further contends that under Pennsylvania law, parking tickets are civil matters subject to a two-year statute of limitations and that "[u]nder the confiscation law [his car] had to be

9

involved in an illegal act to be held." (*Id*. at 9-10.) He charges that PPA held his car for ransom as part of an illegal scheme to raise money. (*Id*. at 10.)

There is no claim here. The statute of limitations to which Stephens refers, 42 PA. CONS. STAT. § 5524, sets forth when a plaintiff may bring a lawsuit against a defendant for certain grievances, including a forfeiture action. That statute is thus inapplicable here. Furthermore, an individual cannot escape his obligation to pay parking tickets and other fines by saying that they have reached a certain age at which point the City of Philadelphia is no longer entitled to collect upon them.

        **D.**      **Claims Against the Bureau of Administrative Adjudication**

Stephens claims that the BAA acted illegally when it forced him to sign an agreement to pay for tickets and "reinforced the fact that [his] vehicle would not be returned if [he] didn't sign the agreement." (*Id*. at 11.) He claims that it was an illegal agreement because the statute of limitations had run. (*Id*. at 13.) He also alleges that the BAA failed to offer him assistance as he pursued this matter, provided no public restrooms despite long waiting lines, and that BAA employees were "extremely rude." (*Id*. at 13, 16.)

Accepting these allegations as true, the Court concludes that Stephens has failed to state a claim against the BAA. The failure of BAA to act in a professional or courteous manner does not rise to a constitutional violation. *See Thompson v. Union Cnty. Div. of Soc. Servs.*, Civ. A. No. 07-4928, 2008 WL 2967030, at *3 (D.N.J. July 31, 2008) (concluding that rude behavior by staff of government agency did not suffice to sustain civil rights claim).

As for his claims that poorer individuals and minorities are treated differently, he pleads no facts to substantiate these claims that the PPA or BAA treat persons differently. The Court cannot

extrapolate that Defendants conduct violates the Constitution simply because Plaintiff's experience with these institutions was unpleasant. Furthermore, he does not allege that only certain customers were permitted to use the restroom and the Court has uncovered no law that would require the BAA to operate a public restroom. Life's inconveniences do not ripen into civil rights violations.

**IV.     CONCLUSION**

The Commonwealth and Philadelphia Traffic Court must be dismissed for jurisdictional reasons. The PPA and BAA will be dismissed for failure to state a claim. The Court will not address the allegations against the City of Philadelphia or Philadelphia Department of Finance because no motions have yet to be filed by either of those Defendants. An Order consistent with this Memorandum will be docketed separately.